[S. F. No. 12398.   Department Two.—September 1, 1928.]

SUGARMAN IRON & METAL COMPANY (a Corporation), Respondent, v. MILLER & LUX, INC. (a Corporation), Appellant.

J. E. Woolley and Vincent J. McGovern for Appellant.

Brownstone & Goodman for Respondent.

SHENK, J.—This is an appeal from a judgment for $5,000 in favor of the plaintiff in an action for damages for the breach of a contract to sell certain scrap or salvage material.

Prior to June, 1925, the defendant maintained and operated a meat packing plant in South San Francisco. The plant was destroyed by fire during that month. At that time the plaintiff was a dealer in scrap-iron and metals, with offices in San Francisco. ▇ Shortly after the fire and on June 20, 1925, the plaintiff sent to the defendant a letter submitting an offer to buy "all of the scrap-iron, metal, pipe and machinery, boilers, etc.," which had gone through the fire at the price of $7.50 per ton. This letter also contained the following clause: "We also agree to permit your engineers to reserve whatever material they may deem necessary for the equipment of your contemplated new plant." On the same day the defendant replied by letter accepting the offer. Pursuant to the terms of this contract the plaintiff, during the months of July, August, and December, 1925, removed from the premises 991,770 pounds of scrap-iron and paid therefor the sum of $5,275.49. In addition to this material there were five boilers on the premises which were of a value of $5,000 in excess of their value as junk. The engineers of the defendant reserved these five boilers, together with certain other material not involved herein, but the new plant was not built. The plaintiff made demand for the possession of the boilers and, the demand having been refused, commenced this action on March 16, 1926. The

court found that subsequent to the execution of said agreement, and prior to the filing of the complaint herein, the engineers of the defendant reserved the boilers in question and notified the plaintiff of their intention so to reserve the same; that preliminary plans for said then contemplated plant of the defendant were prepared by the engineers and architects of said defendant prior to the filing of the complaint.

The court found that eight months was a reasonable time to allow the defendant to build the new plant and thus avoid its obligation to deliver the boilers to the plaintiff. An interlocutory judgment was entered on November 9, 1926, wherein it was provided that unless the defendant actually installed the boilers in a meat packing plant within eight months from the date of the interlocutory judgment, the plaintiff would be entitled to judgment against the defendant for the sum of $5,000. As the boilers were not installed in a new plant within the time required and as it further appeared that the defendant had disposed of its packing plant equipment, including said boilers, a final judgment was entered against the defendant on June 8, 1927. This is an appeal from the final judgment.

It is first contended that the judgment is not supported by the findings of fact. It is urged that when it was found on undisputed evidence that the engineers of the defendant had reserved the boilers, that at the time such reservation was made a new packing plant was in the contemplation of the defendant; and that prior to the commencement of the action, preliminary plans for the new plant had been prepared by the engineers and architects of the defendant, judgment should have been entered for the defendant.

We think the defendant's position must be sustained. When the finding is considered in the light of the contract between the parties and the evidence in support of the finding, it would seem to follow that when the engineers of the defendant set apart the boilers for its then contemplated new plant, the boilers were removed from the operation of the contract the same to all intents and purposes as if they had never been included therein. The good faith of the defendant in making the reservation of the boilers is not questioned. It was in evidence and undisputed that up to the time of the trial the construction of the new plant had

not been abandoned, but that the new enterprise had been delayed on advice of the defendants' bankers. The main purpose of the contract of sale of the damaged material was to permit the plaintiff to purchase the material not usable, in the judgment of the defendant's engineers, for packing plant purposes. It would be entirely unreasonable to assume that the defendant intended to sell as junk material at $7.50 per ton valuable boilers worth $5,000 over and above the junk price. This, doubtless, would have been the effect of the contract in the absence of the provision for the reservation of the usable material. The recited purpose for which the reserved material should be used was plainly incidental to the main feature of the contract, to wit, the sale of junk material. When the boilers were reserved in good faith for a new packing plant in contemplation at the time the reservation was made and the plaintiff was, as here, immediately notified of the reservation, we are unable to conclude that it was any concern of the plaintiff as to what later caused a delay or abandonment of the contemplated new plant.

The judgment is reversed.

Richards, J., and Langdon, J., concurred.

Hearing in Bank denied.

All the Justices present concurred.